IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| LCS CORRECTIONS SERVICES, INC., and GOTTLIEB & GOTTLIEB, P.A., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CASE NO. _____ |
| DOCTOR R. CRANTS, JR.; SHIRLEY CRANTS; and LCS HOLDINGS, LLC, | ) ) ) | |
| Defendants. | ) ) ) | |

## COMPLAINT

Plaintiff, LCS Corrections Services, Inc. ("LCS Corrections"), by its undersigned counsel, sues defendants, Doctor R. Crants, Jr. ("Crants"), Shirley Crants, and LCS Holdings, LLC ("LCS Holdings"), and plaintiff, Gottlieb & Gottlieb, P.A. ("Gottlieb & Gottlieb"), by its undersigned counsel, sues defendants, Crants and Shirley Crants, and say:

## GENERAL ALLEGATIONS

1.      This is an action for damages in excess of $75,000, exclusive of interest and costs.

2.      LCS Corrections is a Louisiana corporation. At all material times, the principal place of business of LCS Corrections has been located in Pinellas County, Florida.

3.      Gottlieb & Gottlieb is a Florida professional association. At all material times, the principal place of business of Gottlieb & Gottlieb has been located in Pinellas County, Florida.

4.      Crants is a resident and citizen of Davidson County, Tennessee.

5. Shirley Crants is a resident and citizen of Davidson County, Tennessee. Shirley Crants is the wife of Crants.

6. LCS Holdings is a Tennessee limited liability company. At all material times, the principal place of business of LCS Holdings has been located in Davidson County, Tennessee. At all material times, Crants has been the chief executive officer of LCS Holdings and has had a 40% ownership interest in LCS Holdings; Joseph F. Johnson, Jr. ("Johnson"), has had a 40% ownership interest; and David Myers ("Myers") has had a 20% ownership interest. Johnson is a resident and citizen of Virginia. Myers is a resident and citizen of California.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because all three defendants reside in this District.

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because both plaintiffs and all defendants are citizens of different states and the amount in controversy exceeds $75,000.

9. All conditions precedent to the institution and maintenance of this action have been performed or have occurred.

10. LCS Corrections was formed as a Louisiana corporation in 1990. From its inception in 1990 through approximately mid-February, 2015, LCS Corrections operated correctional facilities in Alabama, Louisiana, and Texas. An affiliate of LCS Corrections owned each of the correctional facilities, and LCS Corrections managed and operated each of the correctional facilities. By 2013, the total number of correctional facilities owned by affiliates of LCS Corrections and managed and operated by LCS Corrections was eight.

11. Crants was one of the founders of Corrections Corporation of America ("CCA"). Crants became the chief executive officer of CCA and served in that capacity until he was

-2-

terminated by CCA in July, 2000. During Crants' employment by CCA, CCA was an owner and operator of correctional facilities.

12. On or about August 1, 2011, the existing directors of LCS Corrections elected Crants, Johnson, and Myers to become members of the board of directors of LCS Corrections. Crants served as a director of LCS Corrections from August 1, 2011, until January 27, 2014.

13. Beginning in early August, 2011, Crants borrowed money from LCS Corrections through Gottlieb & Gottlieb to pay his and Shirley Crants' living expenses and other expenses. Each loan was evidenced by a demand promissory note with Gottlieb & Gottlieb as payee and Crants as payor. Crants executed and delivered to Gottlieb & Gottlieb a demand promissory note for each loan within a few days of each date set forth in the table below. The date and principal amount of each loan and demand note are set forth in the table below:

| Date | Amount |
|------|--------|
|  |  |
| 08/02/2011 | 250,000.000 |
| 01/01/2012 | 175,000.00 |
| 02/01/2012 | 100,000.00 |
| 03/01/2012 | 75,000.00 |
| 04/01/2012 | 45,000.00 |
| 05/01/2012 | 75,000.00 |
| 06/15/2012 | 60,000.00 |
| 07/25/2012 | 40,000.00 |
| 09/07/2012 | 50,000.00 |
| 11/01/2012 | 60,000.00 |
| 12/12/2012 | 50,000.00 |
| 12/31/2012 | 39,995.89 |
| 02/01/2013 | 60,000.00 |
| 03/15/2013 | 60,000.00 |
| 04/22/2013 | 60,000.00 |
| 06/10/2013 | 60,000.00 |
| 08/01/2013 | 60,000.00 |

-3-

| 09/25/2013 | 60,000.00 |
|---|---|
| 10/21/2013 | 60,000.00 |
| 12/12/2013 | 60,000.00 |

The total principal amount borrowed by Crants was $1,499,995.89.

14.     Beginning in the fall of 2013, Jerry Gottlieb ("Gottlieb"), the chairman of the board of directors of LCS Corrections; Crants; and bond counsel for LCS Corrections, Shutts & Bowen, began working with Raymond James & Associates, Inc. ("Raymond James"), and its outside counsel to arrange bond financing to refinance the existing financing on six of the eight correctional facilities owned by affiliates of LCS Corrections.

15.     Without the knowledge or approval of LCS Corrections, Crants requested the lead underwriter for Raymond James to pay to him and Johnson a $2 million fee from the bond proceeds to be borrowed by LCS Corrections. Crants requested that the $2 million fee be paid to LCS Holdings upon the closing of the bond transaction.

16.     Crants fraudulently concealed from LCS Corrections his request for the payment of the $2 million fee.

17.     On the morning of January 23, 2014, the date of the closing of the bond transaction, the payment of the $2 million fee to LCS Holdings from bond proceeds borrowed by LCS Corrections had still not been disclosed to LCS Corrections. Finally, approximately one minute before the deadline for the closing of the bond transaction on January 23, 2014, the $2 million fee to LCS Holdings was disclosed to LCS Corrections when a representative of Raymond James sent to Gottlieb via email at 11:59 am Eastern time a complete copy of the closing statement for the bond transaction.

-4-

18.     LCS Corrections first learned of the $2 million fee to be paid to LCS Holdings from bond proceeds borrowed by plaintiff upon Gottlieb's receipt and review of the complete closing statement after 11:59 am Eastern time on January 23, 2014.

19.     By the time that LCS Corrections was finally informed of the $2 million fee to be paid to LCS Holdings from bond proceeds borrowed by LCS Corrections, there was nothing that LCS Corrections could do to prevent payment of the fee.

20.     On January 23, 2014, the $2 million fee was wire transferred into a Regions Bank account in the name of LCS Holdings, over which Crants exercised complete dominion and control.  At all material times, Crants was the sole authorized signatory for the LCS Holdings account.  Crants and Shirley Crants used the $2 million fee for their personal and family purposes and for Crants' business purposes and spent the entire $2 million fee.

21.     On January 27, 2014, LCS Corrections sent a letter to Crants demanding the return of the $2 million fee.  Crants has failed and refused to return any of the $2 million.  On January 27, 2014, LCS Corrections also sent a letter to Crants notifying him of his removal from the board of directors of LCS Corrections and the revocation of any office or other appointment Crants may have had with LCS Corrections.  On the same date, Gottlieb & Gottlieb sent a letter to Crants demanding payment of the outstanding principal and interest balance on the twenty demand promissory notes in the total amount of $1,568,075.12.

22.     On March 18, 2014, Gottlieb & Gottlieb filed an action in the Circuit Court for Pinellas County, Florida, seeking the recovery of the outstanding principal and interest balance owed by Crants on the twenty demand promissory notes.  Crants then removed that action to the United States District Court for the Middle District of Florida.

-5-

23.     On December 2, 2015, the United States District Court for the Middle District of Florida entered an order granting the motion for summary judgment filed by Gottlieb & Gottlieb against Crants on all of the promissory notes.  In January, 2016, the Court entered an order that directed a second amended judgment to be entered in favor of Gottlieb & Gottlieb and against Crants in the principal amount of $1,499,995.89, plus interest of $249,195.29, for a total judgment amount of $1,749,191.18, which judgment was entered on January 25, 2016.  The Court's order granting summary judgment and second amended final judgment were affirmed on appeal.

24.     On April 26, 2017, the United States District Court for the Middle District of Florida entered judgment in a civil case in the amount of $181,448.05 in favor of Gottlieb & Gottlieb for the attorney's fees and costs it incurred in pursuing its claims against Crants on the twenty demand promissory notes.

25.     Both the second amended judgment and the judgment in a civil case have been registered in this District.

26.     On or about September 28, 2015, LCS Corrections filed a complaint in the Circuit Court for Pinellas County, Florida, against Crants, Raymond James, and Municipal Capital Markets Group, Inc. ("MCM"), seeking the recovery of the $2 million fee paid to LCS Holdings from bond proceeds borrowed by LCS Corrections.  LCS Corrections has settled its claims against Raymond James and MCM.  Its breach of fiduciary duty and fraudulent concealment claims remain pending against Crants.  LCS Holdings has been added as a defendant in that proceeding to the fraudulent concealment count and in a count for unjust enrichment.

-6-

## COUNT I

27.     This is an action for damages by LCS Corrections against LCS Holdings, Crants, and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-305(a)(1).

28.     LCS Corrections adopts and realleges paragraphs 1 through 26.

29.     On January 23, 2014, when the $2 million fee was wire transferred into the LCS Holdings account at Regions Bank in Nashville, Tennessee, Crants and his wife maintained four bank accounts at Regions Bank in Nashville, Tennessee:  the LCS Holdings account; an account in Crants' name individually named the "Crants Business Account" (the "Crants Business Account"); a joint account in the names of Crants and his wife, Shirley Crants (the "Joint Account"); and a joint account in the names of Shirley Crants and Jeffrey Crants, an adult son of Crants and Shirley Crants (the "Jeffrey/Shirley Account").

30.     Upon the transfer of the $2 million fee into the Regions Bank account in the name of LCS Holdings, LCS Corrections became a creditor of LCS Holdings and Crants.

31.     On January 23, 2014, Crants made a transfer in the amount of $405,000 from the LCS Holdings account to the Joint Account.

32.     On January 31, 2014, Crants made a transfer in the amount of $250,000 from the LCS Holdings account to the Jeffrey/Shirley Account.

33.     With respect to the transfer described in paragraph 31, Crants and LCS Holdings were transferors because they parted with an asset or an interest in an asset, and Crants and Shirley Crants were transferees because of their ownership interests in the Joint Account.

34.     With respect to the transfer described in paragraph 32, Crants and LCS Holdings were transferors because they parted with an asset or an interest in an asset.  Shirley Crants was a transferee because of her interest in the Jeffrey/Shirley Account.

-7-

35.   LCS Holdings and Crants made the two transfers described in paragraphs 31 through 34 with the actual intent to hinder, delay, or defraud LCS Corrections, a creditor of LCS Holdings and Crants.

36.   That LCS Holdings and Crants made the transfers described in paragraphs 31 through 34 with the actual intent to hinder, delay, or defraud LCS Corrections is evidenced by a number of badges of fraud in existence at the time of the transfers, including the following: (a) the transfers were to insiders; (b) Crants retained possession or control of the property transferred after the transfer; (c) the transfers were concealed; (d) before Crants and LCS Holdings made the $250,000 transfer to the Jeffrey/Shirley Account, Crants had been threatened with suit; (e) neither LCS Holdings nor Crants received consideration for the transfers; (f) Crants and LCS Holdings were insolvent at the time of the transfers or became insolvent shortly after the transfers were made; and (g) the transfers occurred shortly after Crants had incurred substantial debts.

37.   The transfers described in paragraphs 31 through 34 from the LCS Holdings account are voidable pursuant to T.C.A. § 66-3-308(a)(1).

38.   LCS Corrections has been damaged by the fraudulent transfers made in violation of T.C.A. § 66-3-305(a)(1).

## COUNT II

39.   This is an action for damages by LCS Corrections against LCS Holdings, Crants, and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-305(a)(2).

40.   LCS Corrections adopts and realleges paragraphs 1 through 26, 29 through 34, and 37.

41.     Neither LCS Holdings nor Crants received reasonably equivalent value in exchange for the transfers described in paragraphs 31 through 34.

42.     At the time of the transfers, LCS Holdings and Crants intended to incur, or believed or reasonably should have believed that each would incur, debts beyond the ability of each to pay those debts as they became due.

43.     LCS Corrections has been damaged by the fraudulent transfers made in violation of T.C.A. § 66-3-305(a)(2).

## COUNT III

44.     This is an action for damages by LCS Corrections against LCS Holdings, Crants, and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-306(a).

45.     LCS Corrections adopts and realleges paragraphs 1 through 26, 29 through 34, and 37.

46.     The claim of LCS Corrections against LCS Holdings and Crants arose before the transfers described in paragraphs 31 through 34 were made.

47.     The transfers described in paragraphs 31 through 34 were made by LCS Holdings and Crants without either receiving reasonably equivalent value in exchange for the transfers.  At the time of the transfers, LCS Holdings was insolvent and Crants was insolvent.

48.     LCS Corrections has been damaged by the fraudulent transfers made in violation of T.C.A. § 66-3-306(a).

## COUNT IV

49.     This is an action for damages by LCS Corrections against Crants and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-305(a)(1).

50.     LCS Corrections adopts and realleges paragraphs 1 through 26, 29 and 30.

-9-

51.     On January 23, 2014, following the transfer of the $2 million fee into the LCS Holdings account, Crants made a transfer of $265,000 from the LCS Holdings account into the Crants Business Account in the name of Crants, individually.

52.     On January 31, 2014, Crants made a transfer of $250,000 from the LCS Holdings account to the Crants Business Account in Crants' name, individually.

53.     On February 2, 2014, Crants transferred $50,000 of the $515,000 that he had transferred into the Crants Business Account from that account to the Joint Account.

54.     With respect to the transfer described in paragraph 53, Crants was a transferor because he parted with an asset or an interest in an asset, and Crants and Shirley Crants were transferees because of their ownership interests in the Joint Account.

55.     On June 4, 2015, Crants deposited into the Crants Business Account a check payable to him, individually, in the amount of $100,000 from Party Feathers, LLC, d/b/a HPT International ("Party Feathers").

56.     On June 9, 2015, Crants transferred $35,000 from the Crants Business Account to the Joint Account.

57.     With respect to the transfer described in paragraph 56, Crants was a transferor because he parted with an asset or an interest in an asset, and Crants and Shirley Crants were transferees because of their ownership interests in the Joint Account.

58.     On June 19, 2015, a wire transfer from Moongate International, Inc., in the amount of $100,000 was received into the Crants Business Account.

59.     On June 19, 2015, Crants transferred $50,000 from the Crants Business Account to the Joint Account.

60.     With respect to the transfer described in paragraph 59, Crants was a transferor because he parted with an asset or an interest in an asset, and Crants and Shirley Crants were transferees because of their ownership interests in the Joint Account.

61.     On July 3, 2015, a wire transfer in the amount of $400,000 was received into the Crants Business Account from Party Feathers.

62.     On July 6, 2015, Crants transferred $250,000 from the Crants Business Account to the Jeffrey/Shirley Account.

63.     With respect to the transfer described in paragraph 62, Crants was a transferor because he parted with an asset or an interest in an asset, and Shirley Crants was a transferee.

64.     On May 3, 2016, Crants deposited into the Joint Account a $12,500 check from Corrections Consultants, LLC ("Corrections Consultants"), payable to Crants.

65.     With respect to the transfer described in paragraph 64, Crants was the transferor because he parted with an asset or an interest in an asset, and Crants and Shirley Crants were transferees because of their ownership interests in the Joint Account.

66.     On August 22, 2016, Crants and Shirley Crants executed a Regions Bank form to delete Crants as an owner of the Joint Account and to place the Joint Account solely in the name of Shirley Crants.  (The former "Joint Account" shall hereinafter be referred to as the "Shirley Crants Account".)

67.     On September 19, 2016, Crants deposited into the Shirley Crants Account a check in the amount of $120,000 from Corrections Consultants, LLC, payable to Crants.

68.     With respect to the transfer described in paragraph 67, Crants was a transferor because he parted with an asset or an interest in an asset, and Shirley Crants was a transferee because of her ownership interest in the Shirley Crants Account.

-11-

69.     On November 1, 2016, a $1,500 check from Northwestern Mutual payable to Crants was deposited into the Shirley Crants Account.

70.     With respect to the transfer described in paragraph 69, Crants was a transferor because he parted with an asset or an interest in an asset, and Shirley Crants was a transferee because of her ownership interest in the Shirley Crants Account.

71.     On November 14, 2016, a $5,000 check from James Phillips payable to Crants was deposited into the Shirley Crants Account.

72.     With respect to the transfer described in paragraph 71, Crants was a transferor because he parted with an asset or an interest in an asset, and Shirley Crants was a transferee because of her ownership interest in the Shirley Crants Account.

73.     On December 22, 2016, a $10,000 check from USAA Federal Savings Bank payable to Crants was deposited into the Shirley Crants Account.

74.     With respect to the transfer described in paragraph 73, Crants was a transferor because he parted with an asset or an interest in an asset, and Shirley Crants was a transferee because of her ownership interest in the Shirley Crants Account.

75.     Crants made the transfers described in paragraphs 53, 54, 56, 57, 59, 60 and 62 through 74 with the actual intent to hinder, delay, or defraud LCS Corrections, a creditor of Crants.

76.     That Crants made the transfers described in paragraphs 53, 54, 56, 57, 59, 60 and 62 through 74 with the actual intent to hinder, delay, or defraud LCS Corrections is evidenced by the existence of a number of badges of fraud at the time of the transfers, including the following: (a) the transfers were to an insider; (b) Crants retained possession and control of the property transferred after the transfer; (c) the transfers were concealed; (d) before the transfers were made,

-12-

Crants had been sued or threatened with suit; (e) Crants received no consideration for the transfers; (f) Crants was insolvent at the time of the transfers or became insolvent shortly after the transfers were made; and (g) the transfers occurred shortly after Crants had incurred substantial debts.

77.     The transfers described in paragraphs 53, 54, 56, 57, 59, 60 and 62 through 74 are voidable pursuant to T.C.A. § 66-3-308(a)(1).   (The transfers described in the above-listed paragraphs are hereinafter referred to as the "2015 and 2016 Fraudulent Transfers".)

78.     LCS Corrections has been damaged by the 2015 and 2016 Fraudulent Transfers in violation of T.C.A. § 66-3-305(a)(1).

## COUNT V

79.     This is an action for damages by LCS Corrections against Crants and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-305(a)(2).

80.     LCS Corrections adopts and realleges paragraphs 1 through 26, 29, 30, 51-74, and 77.

81.     Crants made the 2015 and 2016 Fraudulent Transfers without receiving reasonably equivalent value in exchange for the transfers.

82.     When Crants made the 2015 and 2016 Fraudulent Transfers, he intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay those debts as they became due.

83.     LCS Corrections has been damaged by the 2015 and 2016 Fraudulent Transfers made in violation of T.C.A. § 66-3-305(a)(2).

## COUNT VI

84. This is an action for damages by LCS Corrections against Crants and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-306(a).

85. LCS Corrections adopts and realleges paragraphs 1 through 26, 29, 30, 51 through 74, and 77.

86. The claim of LCS Corrections against Crants arose before Crants made any of the 2015 and 2016 Fraudulent Transfers. Crants made the 2015 and 2016 Fraudulent Transfers without receiving reasonably equivalent value in exchange for the transfers. At the time of those transfers, Crants was insolvent.

87. LCS Corrections has been damaged by the 2015 and 2016 Fraudulent Transfers made in violation of T.C.A. § 66-3-306(a).

## COUNT VII

88. This is an action for damages by Gottlieb & Gottlieb against Crants and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-305(a)(1).

89. Gottlieb & Gottlieb adopts and realleges paragraphs 1 through 26, 29, 31 and 32.

90. Because Crants was the sole authorized signatory on the LCS Holdings account and Crants exercised complete dominion and control over the LCS Holdings account, that account was effectively an account belonging to Crants.

91. Gottlieb & Gottlieb became a creditor of Crants when Crants executed and delivered to Gottlieb & Gottlieb the first demand promissory note dated August 2, 2011.

92. With respect to the transfer described in paragraph 31, Crants was a transferor because he parted with an asset or an interest in an asset, and Crants and Shirley Crants were transferees because of their ownership interests in the Joint Account.

-14-

93.     With respect to the transfer described in paragraph 32, Crants was a transferor because he parted with an asset or an interest in an asset. Shirley Crants was a transferee because of her interest in the Jeffrey/Shirley Account.

94.     Crants made the two transfers described in paragraphs 31, 32, 92 and 93 with the actual intent to hinder, delay, or defraud Gottlieb & Gottlieb, a creditor of Crants.

95.     That Crants made the transfers described in paragraphs 31, 32, 92 and 93 with the actual intent to hinder, delay, or defraud LCS Corrections is evidenced by a number of badges of fraud in existence at the time of the transfers, including the following: (a) the transfers were to insiders; (b) Crants retained possession or control of the property transferred after the transfer; (c) the transfers were concealed; (d) before Crants made the $250,000 transfer to the Jeffrey/Shirley Account, Crants had been threatened with suit; (e) Crants did not receive consideration for the transfers; (f) Crants was insolvent at the time of the transfers or became insolvent shortly after the transfers were made; and (g) the transfers occurred shortly after Crants had incurred substantial debts.

96.     The transfers described in paragraphs 31, 32, 92 and 93 are voidable pursuant to T.C.A. § 66-3-308(a)(1).

97.     Gottlieb & Gottlieb has been damaged by the fraudulent transfers made in violation of T.C.A. § 66-3-305(a)(1).

## COUNT VIII

98.     This is an action for damages by Gottlieb & Gottlieb against Crants and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-305(a)(2).

99.     Gottlieb & Gottlieb adopts and realleges paragraphs 1 through 26, 29, 31, 32, 90 through 93, and 96.

-15-

100.    Crants did not receive reasonably equivalent value in exchange for the transfers described in paragraphs 31, 32, 92 and 93.

101.    At the time of each of the transfers, Crants intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay those debts as they became due.

102.    Gottlieb & Gottlieb has been damaged by the fraudulent transfers made in violation of T.C.A. § 66-3-305(a)(2).

## COUNT IX

103.    This is an action for damages by Gottlieb & Gottlieb against Crants and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-306(a).

104.    Gottlieb & Gottlieb adopts and realleges paragraphs 1 through 26, 29, 31, 32, 90 through 93, and 96.

105.    The claim of Gottlieb & Gottlieb against Crants arose before the transfers described in paragraphs 31, 32, 92 and 93 were made.

106.    Crants made the transfers described in paragraphs 31, 32, 92 and 93 without receiving reasonably equivalent value in exchange for the transfers.  At the time of the transfers, Crants was insolvent.

107.    Gottlieb & Gottlieb has been damaged by the fraudulent transfers made in violation of T.C.A. § 66-3-306(a).

## COUNT X

108.    This is an action for damages by Gottlieb & Gottlieb against Crants and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-305(a)(1).

109.     Gottlieb & Gottlieb adopts and realleges paragraphs 1 through 26, 29, 51 through 74, and 77.

110.     Crants made the 2015 and 2016 Fraudulent Transfers with the actual intent to hinder, delay, or defraud Gottlieb & Gottlieb, a creditor of Crants.

111.     That Crants made the 2015 and 2016 Fraudulent Transfers with the actual intent to hinder, delay, or defraud LCS Corrections is evidenced by the existence of a number of badges of fraud at the time of the transfers, including the following:  (a) the transfers were to an insider; (b) Crants retained possession and control of the property transferred after the transfer; (c) the transfers were concealed; (d) before the transfers were made, Crants had been sued or threatened with suit; (e) Crants received no consideration for the transfers; (f) Crants was insolvent at the time of the transfers or became insolvent shortly after the transfers were made; and (g) the transfers occurred shortly after Crants had incurred substantial debts.

112.     Gottlieb & Gottlieb has been damaged by the 2015 and 2016 Fraudulent Transfers made in violation of T.C.A. § 66-3-305(a)(1).

## COUNT XI

113.     This is an action for damages by Gottlieb & Gottlieb against Crants and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-305(a)(2).

114.     Gottlieb & Gottlieb adopts and realleges paragraphs 1 through 26, 29, 51 through 74, 77, 81 and 82.

115.     Gottlieb & Gottlieb has been damaged by the 2015 and 2016 Fraudulent Transfers made in violation of T.C.A. § 66-3-305(a)(2).

**COUNT XII**

116.     This is an action for damages by Gottlieb & Gottlieb against Crants and Shirley Crants for fraudulent transfers in violation of T.C.A. § 66-3-306(a).

117.     Gottlieb & Gottlieb adopts and realleges paragraphs 1 through 26, 29, 51 through 74, and 77.

118.     The claim of Gottlieb & Gottlieb against Crants arose before Crants made any of the 2015 and 2016 Fraudulent Transfers.

119.     Crants made the 2015 and 2016 Fraudulent Transfers without receiving reasonably equivalent value for the transfers.  At the time of those transfers, Crants was insolvent.

120.     Gottlieb & Gottlieb has been damaged by the 2015 and 2016 Fraudulent Transfers made in violation of T.C.A. § 66-3-306(a).

WHEREFORE, in light of the foregoing,

1.     LCS Corrections demands entry of a judgment in its favor against LCS Holdings, Crants, and Shirley Crants, jointly and severally, on Counts I through III and against Crants and Shirley Crants, jointly and severally, on Counts IV through VI for compensatory damages, interest, costs, and such other and further relief as the Court deems just and proper.

2.     Gottlieb & Gottlieb demands entry of a judgment in its favor against Crants and Shirley Crants, jointly and severally, on Counts VII through XII for compensatory damages, interest, costs, and such other and further relief as the Court deems just and proper.

3.     LCS Corrections and Gottlieb & Gottlieb further demand trial by jury as to all issues so triable.

-18-

LEWIS, THOMASON, KING,
KRIEG & WALDROP, P.C.


By: /s/ Reba Brown
    Reba Brown, BPR # 10920
    Brad W. Craig, BPR # 31082
    424 Church Street, Suite 2500
    P.O. Box 198615
    Nashville, Tennessee 37219
    Telephone: 615-259-1366
    Facsimile: 615-259-1389
    Email: rbrown@lewisthomason.com
    Email: bcraig@lewisthomason.com

Co-Counsel:

Scott C. Ilgenfritz, FBN 394084
Johnson, Pope, Bokor,
Ruppel & Burns, LLP
P.O. Box 1100
Tampa, Florida 33601-1100
Telephone: 813-225-2500
Facsimile: 813-223-7118
Primary email: scotti@jpfirm.com
Secondary email: debbieh@jpfirm.com

-19-